**NOT FOR PUBLICATION**

**FILED**

UNITED STATES COURT OF APPEALS

DEC 28 2016

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS



| | |
|---|---|
| ENGSTROM, LIPSCOMB & LACK, APC, | No.    15-70591 |
| Petitioner-Appellant, | Tax Ct. No. 27364-12 |
| v. | MEMORANDUM[*] |
| COMMISSIONER OF INTERNAL REVENUE, | |
| Respondent-Appellee. | |

Appeal from a Decision of the
United States Tax Court

Argued and Submitted December 6, 2016
Pasadena, California

Before:  CALLAHAN, BEA, and IKUTA, Circuit Judges.

Engstrom, Lipscomb & Lack, APC ("Engstrom") appeals from the Tax

Court's decision finding that Engstrom had tax deficiencies in tax years 2008 and

---

        [*]        This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

2010 and that accuracy-related penalties were warranted. We have jurisdiction pursuant to 26 U.S.C. § 7482(a)(1), and affirm.[1]

Pursuant to 26 U.S.C. § 274(d), to claim a travel expense as a deduction, the taxpayer must substantiate the expense with evidence showing, among other things, the cost and business purpose of the claimed expense. Treasury Regulation § 1.274-5T(c)(2)(ii)(B) provides that, "[w]here the business purpose is evident from the surrounding facts and circumstances, a written explanation of such business purpose will not be required." Relying on Treasury Regulation § 1.274-5T(c)(2)(ii)(B), as well as the evidence it presented to the Tax Court, Engstrom claims that it is entitled deduct all of its payments to G&L Aviation.

The Tax Court's determination that Engstrom's evidence was adequate to substantiate some, but not all, of Engstrom's payments to G&L Aviation is not error, clear or otherwise. *See Sparkman v. Comm'r*, 509 F.3d 1149, 1159 (9th Cir. 2007) (stating that clear error review applies to the Tax Court's substantiation findings). First, despite arguing that it had agreed to pay G&L Aviation the amounts claimed as deductions in exchange for 24-hour-standby use of G&L Aviation's aircrafts, Engstrom produced no written record of such an agreement

---

[1] As the parties are familiar with the facts and procedural history, we restate them here only as necessary to explain our decision.

and the offered testimony did not clearly establish the alleged agreement's existence. The Tax Court could rely on evidence that weighed against Engstrom's theory, such as the fact that the planes were flown for personal use, and that Engstrom's claimed payment for standby use also included rent for a Staples Center suite that Engstrom has since conceded is not properly deductible.

The Tax Court did not err in the method it adopted for determining business purpose and calculating allowable deductions. Engstrom's evidence did not clearly show that all of the flights in question had a business purpose. Of the flights with a substantiated business purpose, Engstrom put forward no evidence establishing their individualized cost. Thus, the Tax Court could rely upon Ms. Rebekah Herbert's testimony to set each flight's value. *See Norgaard v. Comm'r*, 939 F.2d 874, 879 (9th Cir. 1991) (stating that the Tax Court has "considerable latitude in estimating the amount of the allowable deduction"). As a result, the Tax Court's conclusion that Engstrom could not deduct as a travel expense the entire amount it had paid to G&L Aviation is not error.

Additionally, the Tax Court's finding that Engstrom could not deduct Walter Lack's payments to G&L Aviation as a travel expense is not error. Engstrom contends that Lack's payments to G&L Aviation constitute deductible loans, as the payments related to Lack's travel on behalf of Engstrom and both parties intended

3

for Engstrom to reimburse Lack the amounts he had paid. In *Welch v. Commissioner*, we stated that, in addition to "ask[ing] whether, when the funds were advanced, the parties actually intended repayment," courts are to employ the following non-exhaustive, seven-factor test when determining whether a transaction constitutes a "true loan":

> (1) whether the promise to repay is evidenced by a note or other instrument; (2) whether interest was charged; (3) whether a fixed schedule for repayments was established; (4) whether collateral was given to secure payment; (5) whether repayments were made; (6) whether the borrower had a reasonable prospect of repaying the loan and whether the lender had sufficient funds to advance the loan; and (7) whether the parties conducted themselves as if the transaction were a loan.

204 F.3d 1228, 1230 (9th Cir. 2000). "[N]o single factor is dispositive." *Id.*

In light of *Welch*'s instruction, the Tax Court did not err in finding that Lack's payments were not loans. *See id.* at 1230–31 (applying clear error review to the Tax Court's loan determination). While there is some evidence to support Engstrom's position, there is more than enough evidence to sustain the Tax Court's conclusion that Lack's payments were to satisfy his personal obligations to G&L Aviation, not Engstrom's. Accordingly, Engstrom is not entitled to claim Lack's payments to G&L Aviation as a travel expense.

4

Last, the Tax Court did not err in concluding that accuracy-related penalties were warranted. Accuracy-related penalties are assessed when a tax underpayment is due to a taxpayer's "[n]egligence or disregard of rules or regulations." 26 U.S.C. § 6662(a)–(b). Here, the assessment of the penalties hinged upon whether the claimed travel expenses were adequately substantiated. Because the majority of these expenses were not, and Engstrom failed to demonstrate that its lack of substantiation was reasonable, *see id.* § 6664(c)(1) (stating that accuracy-related penalties shall not be imposed "if it is shown that there was a reasonable cause for" a tax underpayment and "the taxpayer acted in good faith"), the Tax Court correctly concluded that accuracy-related penalties could be assessed against Engstrom.

   **AFFIRMED**.